IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| LEVI KNOX, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 15-0288-CV-W-ODS |
| MAZUMA CREDIT UNION, | ) |
| Defendant. | ) |

ORDER AND OPINION REMANDING THIS CASE
FOR LACK OF SUBJECT MATTER JURISDICTION

Plaintiff Levi Knox ("Plaintiff") filed this suit in state court in March 2014 on behalf of himself and a proposed class of Missouri residents. He filed his Amended Petition on April 9, 2015, and Defendant Mazuma Credit Union ("Defendant") received notice of the Amended Petition on April 9, 2015. Defendant removed the case to federal court on April 17, 2015. Defendant maintains federal jurisdiction exists because the case arises under federal law within the meaning of 28 U.S.C. § 1331.

The Court directed Plaintiff to respond to this jurisdictional argument, and Plaintiff did so. The matter is now fully briefed. The Court has reviewed the parties' arguments and finds subject matter jurisdiction does not exist. Accordingly, the Court remands this action to state court for all further proceedings.

Background

Plaintiff asserts he was a customer of Defendant Mazuma Credit Union. Plaintiff claims Defendant engaged in unfair and deceptive practices involving its ATM and everyday debit card overdraft program. Based on these allegations, Plaintiff brings claims for breach of contract (Count I), breach of covenant of good faith and fair dealing (Count II), unjust enrichment (Count III), and violation of the Missouri Merchandising Practices Act ("MMPA") (Count IV). Plaintiff alleges Defendant violated the MMPA by engaging in an "unfair" practice, and the unfair practice constitutes actions prohibited by

the Electronic Funds Transfer Act ("EFTA"). The unjust enrichment claim is similarly predicated on conduct that violates the EFTA.

Standard

Defendant argues jurisdiction exists under 28 U.S.C. § 1331 because the case arises under federal law. It is well-settled that a suit arises under the law that creates the cause of action; it also is well-settled that this is a rule of inclusion not exclusion. *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 808-09 (1986). Thus, while Plaintiff's claims are created by state law (and are not automatically considered "arising under" federal law), this does not end the inquiry.

In a series of cases the Supreme Court has warned must be read cautiously, a narrow category of state-law claims may arise under federal law. *See Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 699 (2006) (describing this as a "special and small category."). This occurs when state claims "nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). However, the fact that a federal issue is a contested ingredient in a state-based claim is insufficient; the issue must be a "substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum" and federal jurisdiction "must be consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." *Id.* at 313-14. In a passage critical to the inquiry, the *Grable* Court warned that "the presence of a disputed federal issue and the ostensible importance of a federal forum are never necessarily dispositive; there must always be an assessment of any disruptive portent in exercising federal jurisdiction." *Id.* The *Grable* Court cautioned, however, that the phrase "federal issue" is not "a password opening federal courts to any state action embracing a point of federal law. Instead, the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.*

The Supreme Court provided further explanation in *Gunn v. Minton*. 133 S.Ct. 1059 (2013). Writing for a unanimous Court, Chief Justice John Roberts distilled this branch of arising-under jurisdiction to those where, "a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.* at 1065. Thus, not all state claims that necessarily raise federal issues qualify under §1331.

Discussion

Plaintiff's claims against Defendant necessarily raise federal issues that are actually disputed because Plaintiff's unjust enrichment claim and MMPA claim depend on proving Defendant violated the EFTA. However, the mere fact that Plaintiff's state court petition raises federal issues is not sufficient to create federal jurisdiction. Rather, the federal issues must be substantial and be capable of resolution in federal court without disrupting the federal-state balance approved by Congress.

Defendant asserts the federal issues raised in Plaintiff's petition are substantial, because of the importance of the federal issues to Plaintiff's claims. The Court finds this argument unavailing. *Gunn* cautioned that determining whether a contested federal issue is "substantial" is not an inquiry to be made with respect to the case at hand – for if this were the case, then the requirement would have no meaning because every federal issue that is necessarily raised and actually disputed would be substantial. *Id.* at 1066. Instead, the Court noted that substantiality is measured by some importance external to the suit at hand: in *Grable*, it was the validity of IRS regulations related to the sale of taxpayers' assets and in *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180 (1921), substantiality existed because the case turned on the constitutionality of bonds issued by a federal agency. *Gunn*, 133 S.Ct. at 1066, *see also Empire Healthchoice*, 547 U.S. at 69 (noting *Grable* raised a substantial issue because it "centered on the action of a federal agency (IRS) and its compatibility with a federal statute…"). The present suit does not raise a federal issue that is as substantial as these; "[i]n sum, *Grable* emphasized that it takes more than a federal element to open the arising under door." *Empire Healthchoice*, 547 U.S. at 700 (quotations omitted).

3

Defendant's remaining arguments for substantiality are insufficient. Federal courts' greater expertise with federal issues is not enough. *Gunn*, 133 S. Ct. at 1068; Merrell Dow, 478 U.S. at 815-16. The desire for uniform interpretation of federal law is related to the argument about expertise (as it presupposes state courts will not properly interpret federal law) and for the same reasons has been found insufficient. "[T]he possibility that a state court will incorrectly resolve a state claim is not, by itself, enough to trigger the federal courts' [jurisdiction]." *Gunn*, 133 S.Ct. at 1068. Defendants argue that leaving the suit in state court could undermine the stability and efficiency of Congress's regulatory scheme, but (1) this argument also presupposes the state court will incorrectly apply federal law and (2) as the *Merrell Dow* Court stated, this argument is really a justification for Congress to preempt state court jurisdiction (as has been done with National Labor Relations Act, the LMRA, and ERISA, among others) – which Congress plainly has not done here. 478 U.S. at 816.

Defendant also maintains that the exercise of federal jurisdiction will not disturb the balance of federal and state responsibilities. Defendant appears to assert that because Congress created a private right of action under the EFTA, Congress intended for all cases involving the EFTA to be adjudicated in federal court. In essence, Defendant is making a preemption argument. However, as discussed previously, an argument based on preemption is unavailing. Additionally, Defendant raises the uniformity argument again in support of the notion that the balance between federal and state responsibilities will not be disturbed, and again this argument is unpersuasive.

Defendant also relies on *Missouri v. Progressive Business Publications, Inc.* in support of its position. 504 F. Supp.2d 699 (W.D. Mo. 2007). In that case, the court determined the plaintiff's petition presented a federal question and thus defendant properly removed the action to federal court, because the plaintiff's state court petition alleged the defendant violated the MMPA by violating the Telephone Consumer Protection Act ("TCPA"). However, the *Progressive Business Publications* Court did not have the benefit of *Gunn*, which is significant because *Gunn* (1) provided further explanation of what it meant to be substantial, and (2) patent law is an exclusively federal issue and yet the *Gunn* Court still found federal jurisdiction did not exist. Additionally, crucial to the *Progressive Business Publications* Court's decision was the

fact that "the TCPA provides…'The district courts of the United States…shall have exclusive jurisdiction over all civil actions brought under this subsection.'" *Id.* at 701 (citations omitted).  Here, however, the EFTA has no such exclusivity provision.  On the contrary, the EFTA states "any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction…" 15 U.S.C. § 1693m(g).  Finally, this case is not binding authority on this Court.

Ultimately, the question is whether the federal issue is "such an important issue of federal law that [it] belongs in a federal court." *Grable*, 545 U.S. at 315.  There is a need to demonstrate the issue "is significant to the federal system as a whole" – that is, an importance that transcends the parties.  *Gunn*, 133 S.Ct. at 1068.  As noted, this degree of importance has been found only when the government's operations are affected by the federal issue.  Only in such cases could it be stated confidently that if Congress had thought about the issue it would have sensibly concluded the dispute should be resolved by a federal court.  In contrast, Congress has not preempted the entirety of state regulation nor has it divested state courts of jurisdiction in such matters.  This failure is telling and cements the Court's conclusion that the federal issues raised in Plaintiff's state court petition are not substantial within the meaning of *Gunn*.[1]

### Conclusion

The Court finds it lacks subject matter jurisdiction, and therefore remands the case to state court for all further proceedings.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: May 27, 2015        UNITED STATES DISTRICT COURT

---

[1] Defendant points to several cases in support of its position. *Broder v. Cablevision Systems Corp.*, 418 F.3d 187 (2d Cir. 2005); *Ormet Corp. v. Ohio Power Co.*, 98 F.3d 799 (4th Cir. 1996); *Milan Express Co. v. Western Surety Co.*, 886 F.2d 783 (6th Cir. 1989); *West 14th Street Commercial Corp. v. 5 West 14th Owners Corp.*, 815 F.2d 188 (2d Cir. 1987); *West Virginia ex rel McGraw v. Eli Lilly & Co.*, 476 F. Supp.2d 203 (E.D.N.Y. 2007); *New York v. Citibank, N.A.*, 537 F. Supp. 1192 (S.D.N.Y. 1982).  As a preliminary matter, none of these cases are binding authority on this Court.  Additionally, all of these cases were decided before the Supreme Court's decision in *Gunn*, and this Court is obligated to apply decisions from the Supreme Court.